IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth E. McAFEE and SHIRLEY McAFEE, h/w,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC Co., *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 5:13-cv-06856-ER<br><br><br>MDL 875 |

## GENERAL ELECTRIC COMPANY'S REPLY TO PLAINTIFFS' RESPONSE ON THE COURT'S SHOW CAUSE ORDER

Defendant General Electric Company ("GE") respectfully submits this reply to the memorandum submitted by Plaintiffs Kenneth and Shirley McAfee ("Pl. Mem.") [ECF No. 226] in response to the Court's November 12, 2014 Order directing plaintiffs to show cause why the Court should discontinue its long-time practice of severing claims for punitive damages and retaining them in MDL 875 (the "Show Cause Order") [ECF No. 222]. For the reasons below, the Court should continue its time-tested practice of severing punitive damages claims.

This is one of the remaining few cases in MDL 875 in which GE is a defendant. And it is no different from the many prior cases in which GE has been involved, all of which have been successfully and expediently resolved under the Court's current procedures, including the practice of severing punitive damages claims prior to remand. Indeed, plaintiffs have offered this Court no reason to depart from the well-established case-management techniques that have assisted in the management of this MDL for many years.

Severing punitive damages claims has aided the Court in the timely and efficient disposition of a massive volume of cases. In total, 186,595 cases have been transferred to this

MDL. Of those, 183,865 have been terminated. Thus, only 2,730 remain pending here and, of those, only 86 are land cases. *See* October 2014 Statistics, Judicial Panel on Multidistrict Litigation, MDL-875, https://www.paed.uscourts.gov/documents/MDL/MDL875/MDL-875.oct.2014.pdf (last visited November 20, 2014). The Court has ably managed this welter of cases, and should continue the practices that have enabled it to do so.

Plaintiffs do not and cannot dispute that severing punitive damages is well within the court's authority. *See, e.g., In re Collins*, 233 F.3d 809, 811 (3d Cir. 2000). This practice also is supported by reasons of sound policy, *see id.* at 812, which have just as much force today as they did when the Court commenced its practice over a decade ago, *see, e.g.*, Mark A. Behrens & Cary Silverman, *Punitive Damages in Asbestos Personal Injury Litigation: The Basis for Deferral Remains Sound*, 8 Rutgers J. L. & Pub. Pol'y 50 (2011). Plaintiffs' only effort to address the Third Circuit's decision in *Collins* is their assertion that "the need for punitive damages does not appear to have been well presented in *Collins*," such that "the court felt that punitive damages were a windfall." Pl. Mem. at 3; *see id.* at 5. That is not correct; the *Collins* court explained that punitive damages are *by definition* "a windfall to the recipients over and above compensatory damages to which they are entitled," because they are "unrelated to their actual damages." 233 F.3d at 812 (quoting Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation at 32 (March 1991)). In any event, the Third Circuit in *Collins* squarely addressed, and endorsed, this Court's practice of severing punitive damages claims in these cases. *See* 233 F.3d at 811–12.

Likewise, plaintiffs make only a token effort to blunt the force of the rationales behind the Court's long-standing practice, *see id.* at 812; Behrens, *supra*, at 53, by observing that because GE is financially healthy, there is minimal risk that a punitive damages award will deprive later claimants of compensatory damages. *See* Pl. Mem. at 3. By the same token, however, GE's putative financial health means that there is no risk that GE would be unable to

2

pay a punitive damages award later—in the hypothetical future event that plaintiffs were successful on their compensatory claims at trial and then returned to the MDL to seek punitive damages. Indeed, GE is unaware of any plaintiff ever having done so in MDL 875. That fact bolsters the conclusion that retaining the punitive damages claims in the MDL causes no harm to plaintiffs (these, or any others).

Plaintiffs' remaining—and far-flung—contentions are simply irrelevant to the purely procedural matter the Court asked the parties to address, *see* Show Cause Order at 2–3, and without merit in any event. To begin with, plaintiffs contend that this Court lacks jurisdiction over this case and that, even if the Court does have jurisdiction, Pennsylvania state law rather than maritime law governs. *See* Pl. Mem. at 1 n.1. These claims are simply wrong. The Court has already decided that it has jurisdiction over this case by denying plaintiffs' motion to remand. *See* December 30, 2013 Order at 3 [ECF No. 58]. And the Court has clearly ruled that "maritime law is applicable to [Mr. McAfee's] claims" such as these because his alleged exposures occurred aboard ships. October 23, 2014 Order at 4 [ECF No. 216].

Indeed, because plaintiffs' claims are governed by maritime law, it is unclear whether they could ever obtain punitive damages. As this Court has recently held, the availability of punitive damages claims under admiralty law is carefully circumscribed; as to certain claims, punitive damages are not available at all. *In re Asbestos Products Liab. Litig. (No. VI)*, No. 02-MD-875, 2014 WL 3353044, at *2–17 (E.D. Pa. July 9, 2014); *see id.* at *11 (observing that "a general maritime claim of unseaworthiness can support a punitive damages award when brought directly by an injured seaman, but not when brought by a seaman's personal representative as part of a wrongful death or survival action").

Next, notwithstanding the Court's instructions to focus on the procedural issue, plaintiffs have devoted the balance of their memorandum—as well as voluminous exhibits containing various unexplained snippets—to arguing that GE's "record[] of conduct" was "so egregious"

3

that they should be allowed to pursue punitive damages here. *See* Pl. Mem. at 3. The Court's Show Cause Order, however, made plain that it is "not within the scope of this Rule for the Court to decide whether, under substantive maritime or state law, punitive damages are appropriate in any specific case." Order at 2–3. Accordingly, the scores of pages of exhibits that plaintiffs have offered—many of which are inexplicable on their face and far afield from any issue relevant to this particular case, *e.g.*, the pages denoting hotel reservations for a conference in 1952, *see* ECF No. 226-4 at 15–21—are simply beside the point here.

In any event, even if these materials were somehow relevant (and they are not), they would not support plaintiffs' argument that punitive damages against GE are warranted. Essentially all of plaintiffs' exhibits describe "conduct that bore no relation to [Mr. McAfee's] harm." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."). Because the sole basis for plaintiffs' claims here is Mr. McAfee's alleged exposure to wiring on GE-manufactured gyros, *see* October 23, 2014 Order at 7 [ECF No. 216], none of the exhibits plaintiffs offer about, for example, the handling of asbestos in GE's own plants, appear to have any possible bearing on punitive damages in this case.

Moreover, much of plaintiffs' argument actually reflects a company working in good faith to identify a problem and protect its workers. For example, plaintiff offers a report, published by the Commonwealth of Pennsylvania, on GE's then-state-of-the-art system for controlling asbestos exposures at one of its plants. *See* ECF No. 226-1 at 1–12. GE's sharing of its knowledge and experience regarding the handling of asbestos with the government and others in occupational health, rather than reprehensible as plaintiffs characterize it, is exactly the sort of conduct the law should encourage. This is hardly the sort of evidence of culpable conduct that, by plaintiffs' account, potentially could justify punitive damages in this case.

4

Finally, none of the arguments made by the other MDL 875 plaintiffs changes the analysis here. For example, plaintiff Holly Fisch argues that 28 U.S.C. § 1407 requires this Court to remand punitive damages claims because the statute calls for remand "at or before the conclusion of . . . pretrial proceedings." No. 13-cv-4173, ECF No. 22 ("Fisch Mem.") at 3 (quoting 28 U.S.C. § 1407(a)). But, as both the Supreme Court and the Third Circuit have explained, the import of this language is simply that the transferee court may not "assign[] a transferred case to itself for trial." *In re Roberts*, 178 F.3d 181, 184 (3d Cir. 1999) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)). And Fisch concedes, as she must, that "holding punitive damages claims in abeyance is not the same as assigning them to oneself for trial." Fisch Mem. at 4. Nor does she offers any support for her claim that § 1407 implicitly creates a time limit on the Court's ability to retain jurisdiction over certain claims. Her atextual reading of the statute should be rejected.

Fisch's other arguments fare no better. In essence, she argues that severing punitive damages claims has never been a good idea because: (a) it is unfair to the plaintiffs in these cases, since asbestos plaintiffs in other jurisdictions can pursue punitive damages; (b) it discourages settlement by reducing defendants' incentives; and (c) transferor courts are capable of handling punitive damages claims. Fisch Mem. at 7, 9, 12–13. But none of these arguments is new, and none has gained any force over the last decade. In fact, the *Collins* court forcefully condemned the fact that other courts were allowing asbestos plaintiffs to pursue punitive damages, *see* 233 F.3d at 812; thus, this factor militates against, rather than for, remanding such claims. Likewise, the use of punitive damages as a cudgel during settlement talks is a bane rather than a boon to the settlement process. *See, e.g.*, Victor E. Schwartz et. al., *A Letter to the Nation's Trial Judges: Serious Asbestos Cases—How to Protect Cancer Claimants and Wisely Manage Assets*, 30 Am. J. Trial Advoc. 295, 328 (2006) (lauding this Court's severing policy in part because "[t]he domino effect of inappropriate punitive damage awards occurs even in cases

5

that are settled out of court, due to the leveraging effect punitive damages have at the settlement table."). Finally, the Court's practice of retaining punitive damages claims does not reflect a lack of trust in transferor courts, but rather important public policy considerations that this Court, due to its unique vantage point, is best-situated to safeguard. *See Collins*, 233 F.3d at 812; Behrens, *supra*, at 53.

At bottom, this case is no different from the almost 200,000 other cases this court has successfully and efficiently resolved by following its long-standing practice of severing punitive damages claims. There is no reason for the Court to depart from that settled practice, which has served it so well. At a minimum, the Court should continue that practice in this case.

Dated: November 25, 2014

Respectfully submitted,

/s/ Timothy E. Kapshandy
Timothy E. Kapshandy
SIDLEY AUSTIN, LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7643
tkapshandy@sidley.com

and

/s/ John P. McShea
John P. McShea
McSHEA LAW FIRM, P.C.
Centre Square, West Tower
1500 Market Street, 40th Floor
Philadelphia, PA 19102
(215) 599-0800
jmcshea@mcshealawfirm.com

*Attorneys for Defendant
General Electric Company*

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of November, 2014, a true and correct copy of the foregoing Defendant General Electric Company's Reply to Plaintiffs' Response on the Court's Show Cause was served on all counsel of record, *via* electronic filing.

Robert E. Paul, Esquire
Paul Reich & Myers
1608 Walnut Street, Suite 500
Philadelphia, PA 19103

and

Defense Counsel of Record

/s/ John P. McShea
John P. McShea