IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (No. VI) | : <br> : <br> : | Consolidated Under<br>MDL DOCKET NO. 875 |

---

| | | |
|---|---|---|
| MCAFEE | : <br> : <br> : | |
| v. | : <br> : | |
| CBS CORPORATION | : | No. 5-13-cv-06856-ER |

---

**DEFENDANT JOHN CRANE INC.'S MEMORANDUM IN RESPONSE TO
NOVEMBER 12, 2014 ORDER REGARDING A RULE TO SHOW CAUSE ON THE
CONTINUED SEVERANCE AND RETENTION OF PUNITIVE DAMAGES CLAIMS**

## I. INTRODUCTION

Plaintiffs sued John Crane Inc. ("JCI") alleging that JCI's failure to warn of the dangers allegedly associated with the use of its asbestos-containing products caused their injuries.[1] On November 12, 2014, this Court, *sua sponte*, asked plaintiffs to show cause why "the Court should discontinue its practice of severing claims for punitive damages and retaining these claims in the MDL 875 Court. The issue is procedural." *See* November 12, 2014 Order at 2. This Court observed that "[d]ue to the passage of time, *inter alia*, circumstances may now have changed making it appropriate to revisit this practice to determine whether it should be continued in all cases." *Id*. JCI respectfully submits that this Court should continue its practice of severing and deferring plaintiffs' punitive damages claims against JCI for any one of several reasons.

*First*, contrary to plaintiffs' argument, the primary policy reason that led to this Court's severance and deferral of punitive claims—the desire to conserve as long as possible the limited fund of moneys available to compensate the injured—remains as compelling today, at least with respect to JCI, as it was decades ago. Indeed, while the number of cases pending on this Court's docket has been reduced significantly, JCI still faces over 80,000 individual asbestos claims nationwide. Because JCI has limited resources from which to pay judgments as they are entered, the sage reasoning behind the decades-long deferral of punitive claims still applies. *Second*, plaintiffs are not prejudiced by the continued deferral of their punitive claims, because they have no vested right to recover them at all. *Third*, ending the severance and deferral of punitive damages will serve no sound juridical or public policy purpose for which punitive damages were

---

[1] This brief is filed in response to arguments advanced in briefs filed on behalf of the plaintiffs in *Morris v. Honeywell Int'l et al.*, 2:13-cv-06591, and *McAfee v. CBS Corporation et al.*, 5-13-cv-06856. JCI notes that the *McAfee* plaintiffs erroneously assert that the Navy required suppliers of asbestos products "to warn in accord with state labeling and warning requirements." *See McAfee* Pl. Brief at 5 (citing Exhibit P). There is nothing within the relevant Navy specifications requiring adherence to state laws of any kind, and Exhibit P itself does not support plaintiff's statement.

2

created, and only will lead to more, and more expensive, litigation in this Court. In short, this Court should continue to defer claims for punitive damages.

## II. ARGUMENT

### A. Punitive Damages Awards Will Deplete Limited Funds Available For Future Claimants

This Court should preserve the *status quo*, because punitive damages awards will serve only to decrease the limited funds available to compensate future plaintiffs with meritorious claims. In 1991, the judge then managing this docket, Judge Charles Weiner, chose to sever and retain jurisdiction over demands for punitive damages while allowing the issues of liability and compensatory damages to proceed to trial. Judge Weiner's decision was affirmed and supported on public policy grounds by the Third Circuit. *In re: Collins*, 233 F.3d 809, 812 (3d Cir. 2000). In *In re: Collins*, the Third Circuit recognized that the "[t]he resources available to persons injured by asbestos are steadily being depleted," and concluded:

> It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damages claims on remand. It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation.

*Id.*

The Third Circuit also reiterated Judge Weiner's reasoning for the deferral of punitive claims, stating that "the sick and dying, their widows and survivors should have their claims addressed first." *Id.* Judge Weiner and the Third Circuit were not alone in their thinking. In fact, the Judicial Conference Ad Hoc Committee on Asbestos Litigation, appointed by United States Supreme Court Chief Justice William Rehnquist, had previously asked Congress to review the role of punitive damages in mass torts, including provisions to limit or eliminate exposure to

punitive damages, because "[m]eritorious claims may go uncompensated while earlier claimants enjoy the windfall unrelated to their actual damages." *Id.* (quoting Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation 32 (Mar. 1991)). Judge Weiner's, the Third Circuit's and the Committee's reasoning was, and remains, sound.

Plaintiffs provide no concrete examples, much less proof, that "the considerations and policies underlying the deferral of plaintiffs' legitimate punitive damages counts now rest on far less compelling footing." *See Morris* Pls. Br. at 4. Presumably, plaintiffs are referring to the reduction in the number of cases pending on this Court's docket. *See* http://www.paed.uscourts.gov/documents/MDL/MDL875/MDL-875.oct.2014.pdf (stating that 51,818 cases were pending as of October 31, 2008, compared to 2,730 as of October 31, 2014). But even though this Court's docket has shrunk, JCI continues to confront thousands of claims nationwide. To be sure, as of July 31, 2014, JCI was a defendant in over 50,000 cases, comprising more than 80,000 individual claims. *See* Declaration of Daniel J. O'Connell at ¶ 6, attached hereto as Exhibit A. And the number of new claims against JCI has increased markedly in each of the past four years. For example, in fiscal year 2010, JCI received notice of 2,012 new asbestos-related injury cases. *Id.* at ¶ 7. By fiscal year 2013, however, JCI's new claim filings had doubled to 4,280. *Id.* In fiscal year 2014, nearly 6,000 new asbestos-related injury claims were filed against JCI. *Id.*

Given the number of claims JCI faces, the present availability of punitive damages within this Court will have a deleterious impact. Plaintiffs and defendants agree that asbestos litigation remains a zero sum game—money spent on one claimant today may not be available for another claimant tomorrow. The prejudice to future asbestos claimants if punitive damages claims are allowed is, therefore, palpable. In fact, the Supreme Court of the United States recognized in

4

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 598 (1997), "[t]he most objectionable aspects of asbestos litigation can be briefly summarized; ... exhaustion of assets threatens and distorts the process; and future claimants may lose altogether." Indeed, a concern for the protection of the rights of future claimants in a limited compensatory fund has driven the Supreme Court's reasoning in asbestos-related suits for years.

For example, in *Ortiz, et al. v. Fibreboard Corp.*, et al., 527 U.S. 815 (1999), it was the lack of structural and procedural safeguards to protect the rights of future asbestos disease claimants that led the Supreme Court, in part, to reverse the certification of a "mandatory class" of all asbestos-related injury claims against Fibreboard Corporation that had been engineered by the parties and their insurers. *Id.* at 862 ("As we said in *Amchem*, 'for the currently injured, the critical goal is generous immediate payments,' but 'that goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.'" *Id.* at 845.) In *Ortiz*, the Supreme Court reversed class certification, because the holders of present and future claims required division into homogenous subclasses, under Federal Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel. *Id.* at 856. Plaintiffs here suffer a similar conflict of interest in seeing punitive damages claims to be tried for their benefit and at the expense of future, as-yet unrepresented, claimants.

Accordingly, this Court should continue to sever and defer punitive damages awards that threaten to deplete the limited resources available to compensate the injured. This is not an unusual or controversial measure. In fact, several states prohibit punitive damages in asbestos cases as a matter of law.[2] Maryland has "virtually eliminated" punitive damages claims in

---

[2] *See. e.g.*, FLA. STAT. ANN. § 774.207(1) ("Punitive damages may not be awarded in any civil action alleging an asbestos or silica claim."). States disallowing punitive damages awards generally include Michigan, Nebraska, New Hampshire and Washington. *See Rafferty v Markovitz*, 602 N.W.2d 367 (Mich. 1999); NEB. CONST. ART. VII § 5; N.H. REV. STAT. ANN.§ 507:16; *Dailey v. N Coast Life Ins.* Co., 919 P.2d 589, 590 (Wash. 1996) (en banc).

5

asbestos cases in Baltimore, one of the largest asbestos dockets in the country.[3] In 1991, the Ad Hoc Committee on Asbestos Litigation of the Judicial Conference of the United States determined that "[t]o the extent that some states do not [sic] permit punitive damages, such awards can be viewed as a malapportionment of a limited fund." *See* Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation at 32 (March 1991). The Third Circuit correctly addressed this concern when it affirmed this Court's practice of withholding remand of punitive damages claims. *See In re Collins*, 233 F.3d at 812 (quoting the Ad Hoc Committee language). If this Court were to discontinue its practice of severing and deferring punitive damages it will only allow a select few to reap windfalls that others are precluded from even seeking.

Nevertheless, plaintiffs argue that they are being prejudiced, because "asbestos plaintiffs in various [other] states and jurisdictions are permitted to assert punitive damages...." *See Morris* Pls. Br. at 4. However, any concern over the constitutionality of the continued deferral of punitive damages on equal protection grounds is misplaced. Disparate treatment is permitted when it is reasonably related to a legitimate government interest. *See, e.g., In re Air Crash Disaster near Chicago*, 644 F.2d 594, 610 (7th Cir. 1981) (finding that state's decision to limit punitive damages was constitutional under the rational relationship test); *In re Paris Air Crash*, 622 F.2d 1315, 1322-1323 (9th Cir. 1980) (holding that limitation on punitive damages does not violate state and federal equal protection laws because it "advance[s] a discernible purpose in a rational manner"). This Court should continue to recognize the legitimate government interest served by the severance and deferral of punitive damages claims.

---

[3] Jay Apperson, *Court reverses punitive damages Asbestos plaintiffs barred from seeking such awards*, BALTIMORE SUN, October 19, 1995 (reporting on the Maryland Court of Appeals' decision *ACandS, Inc. v. Godwin*, 340 Md. 334 (Md. 1995)).

6

Finally, to the extent that insurance remains available at all for a given company, punitive damages are typically not covered by defendants' policies. Accordingly, if awarded, punitive damages must be paid out of the defendants' operating funds or reserves which further reduces the funds available to pay compensatory claims and could drive defendants into bankruptcy. Courts long ago noted "the gravest difficulty in perceiving how claims for punitive damages in such a multiplicity of actions throughout the nation can be so administered as to avoid overkill." *See Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 839 (2d Cir. 1967). The ominous consequences of punitive awards still exist today, as evidenced by over one hundred companies declaring asbestos-related bankruptcies since 1982; a quarter of these occurred in the past ten years, and six were filed last year.[4]

## B. Plaintiffs Will Not Be Prejudiced By This Court's Continued Severance And Deferral Of Punitive Damages Claims

The plaintiffs' primary rationale for ending the decades-long deferral of punitive damages is that they are being prevented from asserting a "victim's right to a claim for punitive damages." *See Morris* Pls. Br. at 4. Plaintiffs, however, cannot be prejudiced by being deprived of something they have no right to receive under the law. Federal courts, including the U.S. Supreme Court, have repeatedly held that punitive damages are not awarded as of right. *See, e.g., Smith v. Wade*, 461 U.S. 30, 52 (1983) (punitive damages "are never awarded as of right, no matter how egregious the defendant's conduct"). Many state courts share this view.[5] For

---

[4] *See* Mark D. Plevin *et al., Where are They Now, Part Six: An Update on Developments In Asbestos-Related Bankruptcy Cases*, MEALEY'S ASB. BANKR. REP., Vol. 11, No. 7, 31 (February 2012); List of Asbestos Bankruptcy Cases in Chronological Order, available at http://www.crowell.com/files/List-of-Asbestos-Bankruptcy-Cases-Chronological-Order.pdf (last visited November 24, 2014).

[5] *See also, e.g., Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 441 (Ohio 2007) ("punitive damages 'are not compensation for injury. Instead they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'") (quoting *Gertz v. Robert Welch, Inc.*, 428 U.S. 323, 350 (1974 )); *Cheatham v. Pohle*, 789 N.E.2d 467, 475 (Ind. 2003) ("[U]nder either the federal or the [state constitution] Takings Clause, there is no property right in a claim for punitive damages. Rather, consistent with their punitive nature, punitive damages are akin to a fine exacted by the government ... to deter and punish wrongdoers."); *Demendoza v. Huffman*, 51 P.3d

7

example, the New York Court of Appeals recognized long ago, punitive damages "are a windfall for the plaintiff who, by hypothesis, has been made whole by the award of compensatory damages." *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990). "Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit." *Id.* at 203. Plaintiffs' argument that continued severance and deferral of punitive damages claims somehow denies them a vested right to such damages is fundamentally flawed and should be rejected.[6]

## C. The Twin Goals of Punishment and Deterrence Cannot Be Served By Allowing Punitive Damages Claims

This Court has recently recognized that the policy reasons for allowing punitive damages claims must be considered in the historic context of asbestos litigation. *See In re Asbestos Products Liability Litigation (Sanchez)*, 2014 U.S. Dist. LEXIS 92959 *55-*67 (July 9, 2014). In *Sanchez*, this Court held that "the policy considerations cautioning against punitive damages

---

1232, 1245-46 (Or. 2002) ("[A] plaintiff has no right or entitlement to punitive damages as a remedy .... Consequently, before entry of a final judgment, a plaintiff ... always has had, at most, an expectation of such an award ... A vested right must be something more than a mere expectation based upon the anticipated continuance of existing laws."); *Chavez v. Keat*, 34 Cal.App.4th 1406, 1415 (1995) ("Unlike compensatory damages, punitive damages are never awarded as of right, no matter how egregious the defendant's conduct."); *Cavalier Mfg. v. Jackson*, 823 So. 2d 1237, 1248 (Ala. 2001) ("Alabama law states ... that an injured party is not entitled as a matter of right to punitive damages in fraud actions, but that such damages are awarded at the discretion of the trier of fact."); *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 728 N.E.2d 547, 562, 312 Ill. App. 3d 731, 749 (Ill. App. 1st Dist. 2000) ("[P]unitive damages are never awarded as a matter of right. Nor is a jury ever obligated to award punitive damages, no matter how egregious the conduct of a defendant."); *State ex rel. St. Joseph Belt Ry. Co. v. Shain*, 108 S.W.2d 351, 355 (1937) (jury is "not required to award punitive damages even though they find the defendant did act maliciously"); *Kocher v. Oxford Life Ins. Co.* 216 W.Va. 56, 61 (W.Va. 2004) ("The jury is at perfect liberty, no matter how wanton or reckless the defendant has been, to refuse punitive damages. It is erroneous to state or imply to the jury that the jury does not have such a discretion and liberty.").

[6] The *McAfee* plaintiff ignored this Court's admonishment that "[i]t is not within the scope of this Rule for the Court to decide whether, under substantive maritime law or state law, punitive damages are appropriate in any specific case," by arguing, without citation to any evidence or authority, that "punitive damages should be included within the trial" against JCI because it allegedly knew of the hazards associated with asbestos in the 1970s but did not warn until 1983. (*McAfee* Pl. Br. at 5.) In any event, McAfee clearly does not want this Court to address the punitive damages issue at all, having filed a motion for remand to state court on November 25, 2014. JCI will address the merits of that motion is a separate pleading, but it bears mentioning now given the procedural nature of this issue presented by this Court's November 12, 2014 order.

awards in asbestos cases do not provide a basis for a judicial ruling that under maritime law punitive damages are unavailable in all such cases as a matter of law," but did not address the procedural issue presented here. *Id.* at *68. Defendants are not asking this Court to rule that punitive damages are unavailable in asbestos cases as a matter of law. This Court, however, can and should continue to procedurally defer punitive claims, because ending the practice will serve no sound juridical or public policy purpose for which punitive damages were created.[7]

The consensus among courts today is that punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are "imposed for purposes of retribution and deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991)); see also Restatement (Second) of Torts § 908(1) (stating that punitive damages may be "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future"). The fairness inherent in due process requires that punitive assessments not exceed those amounts necessary to inflict retribution and prevent reoccurrence. *See, e.g., Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992). When the twin goals of retribution and deterrence have been achieved without the imposition of punitive damages, "use of that weapon is no longer justified." *Dunn v. Hovic*, 1 F.3d 1371, 1396 (3d Cir. 1993) (Weis, J., dissenting).

Neither of these goals can be served by subjecting defendants in this litigation landscape to punitive claims. Since the initial bankruptcies of the 1980's and 1990's, the asbestos litigation

---

[7] Plaintiffs argue that 28 U.S.C. § 1407(a) does not "authorize a discretionary MDL practice of indefinitely suspending the plaintiff's right to pursue any claim to which he may otherwise be entitled." *See Morris* Pls. Br. at 2. Plaintiffs are incorrect. The Third Circuit observed in *Collins* that "Congress granted substantial authority to the Panel to decide how the cases under its jurisdiction should be coordinated" in affirming this Court's then nearly twenty year-long practice of severing and retaining jurisdiction over these claims. *Collins*, 233 F.3d at 812 ("It is significant that section 1407(a) directs that the Panel act "for the convenience of parties and witnesses ... [and to] promote the just and efficient conduct of such [civil] actions"). Moreover, the *Collins* court further recognized the "unusually broad discretion that the Panel is granted in carrying out its assigned functions," and that § 1407(e) states that "no proceedings for review of any order of the panel may be permitted except by extraordinary writ...." *Id.* at 811-12.

landscape has evolved. Following the bankruptcies of the companies responsible for the manufacture or installation of asbestos insulation, plaintiffs' attorneys greatly expanded the roster of defendants in "search of the solvent bystander."[8] As a result, over the last decade lawsuits have been filed against a new generation of defendants, *i.e.*, "those who manufactured products in which asbestos was encapsulated, distributed products containing asbestos, or owned premises that contained asbestos." *Overview of Asbestos Claims Issues and Trends*, AM. ACAD. ACTUARIES, 3 (Aug. 2007). These claims often involve low-dose and/or remote exposures to asbestos-containing products manufactured or supplied by companies that were on the fringe of the industry decades ago.

This Court has previously recognized that for most, if not all, companies involved in asbestos litigation, "the economic players today are quite different from those who made the risk decisions decades ago at the time of exposure." *See In re Asbestos Products Liability Litigation (Sanchez)*, 2014 U.S. Dist. LEXIS 92959 at *58 (internal citations omitted). For that reason, "[p]unitive awards in asbestos cases usually do not punish the individuals who were responsible for the offensive conduct," but instead "inflict harm on current shareholders, customers, and employees" of the defendant corporation. *Id.* (quoting *Dunn*, 1 F.3d at 1403) (Weis, J., dissenting). Punishing these entities, rather than those actually responsible for any wrongdoing, contradicts the social policy that is advanced by awarding punitive damages.

The reinstatement of punitive damages also cannot further the goal of deterrence. In almost every case, the asbestos exposures that plaintiffs allege caused their disease occurred decades ago. This Court has recognized that, due to numerous and high-profile bankruptcies,

---

[8] Mark A. Behrens and Cary Silverman, *Punitive Damages in Asbestos Personal Injury Litigation: The Basis for Deferral Remains Sound*, 8 Rutgers J. L. & Pub. Pol'y 50, 61-62 (2011) (quoting *Medical Monitoring and Asbestos Litigation - A Discussion with Richard Scruggs and Victor Schwartz*, 17-3 Mealey's Litig. Rep.: Asbestos 19 (Mar. 1, 2002)).

10

some believe that the "message of deterrence, both specific and general, has been heard loud and clear," obviating the deterrent effect of a punitive damages award. *See In re Asbestos Products Liability Litigation (Sanchez)*, 2014 U.S. Dist. LEXIS 92959 at *57 (citations omitted). Indeed, nearly all asbestos-containing products have been phased out of the U.S. *See, e.g., Dunn*, 1 F.3d at 1396 ("Actually, there is little conduct to deter because few asbestos-containing products are still manufactured in the United States"). "[T]he compensatory awards in thousands of cases, the cost of years of litigation and previous punitive awards [have been] so large already that [the] policy goals of [punishment and deterrence have] clearly already been met." *In re Asbestos Litig. (Pusey Trial Grp.)*, 1994 Del. Super. LEXIS 392 at *14 (Del. Super. Ct. Sept. 19, 1994), *rev'd on other grounds*, 669 A.2d 108 (Del. 1995). Awarding punitive damages now will not further discourage similar conduct in the future.

### D. Punitive Damages Claims Will Lead To Longer And More Expensive Trials

The mere possibility of an award of punitive damages increases the time and money spent on pre-trial, trial and post-trial proceedings. Nobody can reasonably deny that the question of whether punitive damages are warranted is fact-intensive as to each plaintiff and each defendant. Because punitive damages can be devastatingly large, defendants will be forced to litigate their availability at the pre-trial stage through increased numbers of depositions, document requests and discovery-related motions in preparation for the inevitable filing of motions for summary judgment on the claim. Third-party discovery will also increase, because the parties will need to explore exactly which entities are culpable. Defendants will conduct discovery about the basis of a punitive damages claim against them as well as the facts and circumstances of such claims against other defendants.

A change in this Court's current practice will not encourage settlements either. Because the settlement value of a case often increases when punitive damages are at risk, plaintiffs will

immediately raise their settlement demands regardless of the merit of his or her claim. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298-99 (7th Cir. 1995) ("Judicial concern about [blackmail settlements] is legitimate"). Contrary to plaintiffs' arguments, allowing punitive claims to proceed will *not* lead to more, or more efficient, settlements. *See Morris* Pls. Br. at 5-6. Instead, the threat of punitive damages will more quickly deplete the limited fund from which future plaintiffs must seek compensation. As Judge Joseph Weis, Jr. of the United States Court of Appeals for the Third Circuit observed:

> [T]he potential for punitive awards is a weighty factor in settlement negotiations and inevitability results in a larger settlement agreement than would ordinarily be obtained. To the extent that this premium exceeds what would otherwise be a fair and reasonable settlement for compensatory damages, assets that could be available for satisfaction of future compensatory claims are dissipated.

*Dunn*, 1 F.3d at 1398 (Weis, J., dissenting).

Moreover, if punitive claims are allowed to reach the jury, trials will necessarily be lengthened by the time required for a plaintiff to attempt to prove, and a defendant to attempt to defeat, the allegations of willful and wanton misconduct. Similarly, if a jury awards punitive damage, post-trial motion practice related to the award will require an enormous amount of judicial oversight and, consequently, resources. Appeals will undoubtedly follow in nearly every case in which punitive damages are assessed, raising even further the cost to this Court and the litigants. In short, discontinuing the practice of severing and deferring punitive damages claims will not serve the public welfare.

## III. CONCLUSION

For the reasons explained above, defendant John Crane Inc. respectfully requests that this Court continue to sever and retain jurisdiction over plaintiffs' punitive damages claims, and award such additional relief as it deems just under the circumstances.

                                                DICKIE, McCAMEY & CHILCOTE, P.C.

Dated: November 26, 2014        BY:     TFT2354
                                                    Tiffany F. Turner, Esquire
                                                      Attorney for Defendant, John Crane Inc.

DICKIE, McCAMEY & CHILCOTE, **P.C.**        Attorney for Defendant(s),
By: Tiffany F. Turner, Esquire                    John Crane Inc.
I.D. #62832
1650 Arch Street, Suite 2110
Philadelphia, PA 19103
215-925-2289

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : : : | Consolidated Under MDL DOCKET NO. 875 |
| MCAFEE v. CBS CORPORATION | : : : : : | No. 5-13-cv-06856-ER |

## DECLARATION OF DANIEL J. O'CONNELL

I, Daniel J. O'Connell, under penalties of perjury, do hereby state and declare as follows:

1. I am over the age of twenty-one and am competent to testify as to the statements set forth in this declaration.

2. I am the founder and managing partner of the law firm O'Connell, Tivin, Miller & Burns, LLC ("OTMB").

3. The information provided in this declaration is based on knowledge I have gained through my work at OTMB. If called to testify as a witness, I would testify in accordance with the information set forth herein.

4. My colleagues at OTMB and I are national coordinating trial counsel for John Crane Inc. ("JCI"). In this role, OTMB has primary responsibility for defending JCI in asbestos-related injury lawsuits filed nationwide.

5. As national coordinating trial counsel for JCI, I have responsibility for, among other things, tracking and responding to asbestos-related lawsuits filed against JCI around the country. I have personal knowledge of the number of individual claims and lawsuits pending against JCI in any given quarter.

6. As of July 31, 2014, JCI was a named defendant in over 50,000 cases, and over 80,000 individual asbestos-related claims.

7. In fiscal year 2010, there were a total of 2,102 new asbestos-related injury cases filed against JCI. In fiscal year 2013, JCI was named as a defendant in 4,280 new cases, and in fiscal year 2014 there were 5,983 new asbestos-related claims filed against JCI.

FURTHER DECLARANT SAYETH NOT.

Dated: November 25 2014

_____
Daniel J. O'Connell